UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMMEL D. MEDINA VASQUEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SHERIFF, *et al.*,<br><br>　　　　　Defendants. | Case No.: 1:20-cv-00557-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 17) |

Plaintiff Rommel D. Medina Vasquez is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's second amended complaint, filed September 18, 2020.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

///

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . .." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.
## COMPLAINT ALLEGATIONS

Plaintiff is a pretrial detainee housed at the Fresno County Jail. The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff's hand-written second amended complaint is at largely illegible and difficult to decipher. However, the Court will summarize the facts as best it can.

In November 2019, Plaintiff provided the booking nurse with documentation of his food allergies and IgE levels that were over 2,600. However, Plaintiff's documentation was not provided to the kitchen in a timely manner. Plaintiff did not get a proper meal without ingredients that cause an allergic reaction for a few days. Plaintiff did not eat the dinner trays because he was allergic to most foods served by the Fresno County Jail.

///

1    Plaintiff can eat chicken, beef, pork, bananas, broccoli, etc.  At the time of arrest, Plaintiff was
2 in the process of further testing to determine other allergies due to having high levels of IgE.
3    The physician at the Good Samaritan Clinic informed Plaintiff that he was an allergic plant
4 about to explode, and she had never seen a case like Plaintiff's before.  Plaintiff was advised to walk
5 with an EpiPen because if Plaintiff consumes something of which he is allergic he can go into shock
6 and die.  Plaintiff explained the situation to Dr. Obadina, but Plaintiff was denied further treatment or
7 referral to a specialist.
8    Plaintiff is allergic to gluten, onions, carrot, codfish, peanuts, eggs, soybean, wheat, corn,
9 shrimp, grapes, cabbage, oat, orange, rye, rice, potato, tuna, tomato, crab, lettuce, bell pepper, barley,
10 navy bean, etc.  For the past ten months, Plaintiff's dinner tray consists of beans, mystery meat, green
11 beans, apple sauce, cheese, and three slices of ham for breakfast/lunch.  Although Plaintiff is allergic
12 to twenty plus foods, he can eat hamburger meat, pork, chicken, beef, hot dogs, turkey, ham, bananas,
13 mango, broccoli, etc.
14    Plaintiff then began being served spoiled food which continued for several weeks and days at a
15 time.  Each time Plaintiff received spoiled food, he reported it immediately to the floor officer and
16 asked the officers to log it to keep a record.  Plaintiff has filed grievances and appeals that have been
17 denied.
18    On December 15, 2019, Plaintiff submitted a grievance and spoke with Dr. Obadina and nurse
19 Z. Williams.  Plaintiff informed Obadina and Williams of receiving spoiled beans and asked for a wide
20 variety of foods.
21    Defendant Obadina informed Plaintiff that it was up to the kitchen to serve a wide variety.
22 Plaintiff informed Obadina and Williams that he had spoken to the prison law office in regard to the
23 spoiled food and a wide variety of foods.  Plaintiff asked Obadina if he could make a meal prep and
24 schedule a lunch menu, but both Obadina and Williams advised Plaintiff he could only eat beans and
25 the other foods were for his own desire.  Plaintiff asked to speak with a dietician, but was advised that
26 Wellpath and the Fresno County Jail do not provide dietician services for inmates.  Plaintiff also
27 informed Defendants that he was entitled to the same privileges as other inmates.
28

3

1   Dr. Obadina requested lab testing which revealed Plaintiff had an iron count of 16 which is one
2   point from being dangerous.  Plaintiff informed Obadina that for the past ten months he was served
3   five servings of beans per day.  Plaintiff requested that he be served a wide variety of foods and
4   something other than beans which are high in iron.  Defendant Obadina informed Plaintiff that he
5   should not be concerned with iron count.
6   In January 2020, Defendants Stephen McComas, Brandon Boggs, Danielle Muratore, Amanda
7   Gibson, Ned Burton, Jamie Silveira, and Karen Nunez received an email from the prison law office in
8   regard to Plaintiff receiving a variety of health foods.  After Defendants received the email, Plaintiff
9   continued to receive spoiled beans and a lack of variety of foods.  Defendants failed to act upon or
10  respond to the email.
11  Defendant Captain Stephen McComas is legally responsible for the operation and grievance
12  forms and for the welfare of inmates at the Fresno County Jail.
13  On January 20, 2020, Plaintiff spoke with Defendant Ned Burton who informed Plaintiff that
14  the prison law office emailed the facility.  Defendant Burton asked Plaintiff how he could help him
15  with the situation.  Plaintiff explained that he was allergic to twenty plus foods and that he had been
16  receiving spoiled beans in his sack lunches and that was the only source of protein provided.  Plaintiff
17  informed Burton that he could eat chicken, beef, pork, turkey, hot dogs, hamburger meat, bananas,
18  mango, broccoli.  Defendant Burton told Plaintiff that he would make sure that Plaintiff's dinner and
19  sack lunch would come with a variety of food and no spoiled beans.
20  From January 20, 2020 to January 24, 2020, Plaintiff received spoiled beans in his lunch.
21  On May 23, 2020, officer Zurita documented that Plaintiff was served wheat flour tortillas of
22  which he is allergic.
23  On January 25, 2020, Plaintiff received his sack lunch at 5:25 a.m. and the beans were spoiled.
24  Plaintiff immediately informed Defendant S. Bruton that the beans were spoiled.  Bruton told Plaintiff
25  that she was busy and would not inspect the beans or call the kitchen because dinner was over.
26  Plaintiff then notified Mrs. Sanchez who advised him to tell the floor officer.  When Bruton returned
27  to Plaintiff's unit, Plaintiff asked again if she would inspect his beans and inform the kitchen.
28  Defendant Bruton told Plaintiff that she did not believe the beans were served spoiled.  Plaintiff is

4

prediabetic and started to shake because he was hungry. Therefore, Plaintiff's cellmate gave him a peanut butter sandwich and carrots. However, Plaintiff broke out sweating, was disorientated, had a rapid heart rate and was having trouble breathing. Plaintiff then informed floor officer Maciel about the issue. Plaintiff had no choice but to eat food that he was allergic to.

Plaintiff was called out to the medical unit on January 31, 2020.

On February 4 and 5, 2020, Plaintiff received spoiled beans which were inspected by officers Cisneros and Ramos who informed the kitchen, but Plaintiff did not receive a replacement.

On February 9, 2020, Defendant Obadina told Plaintiff that he was young and healthy and did not need lab work.

On May 30, 2020, Plaintiff was served wheat bread which he is allergic to.

On May 31, 2020, Plaintiff received spoiled and burned burns. Plaintiff informed officer F. Dotson, but he never received a replacement and Plaintiff never signed off on the appeal regarding this incident.

On June 1, 2020, Plaintiff received spoiled beans and reported it to officer Flores. Flores logged it and returned it to the kitchen. On June 2, 2020, Plaintiff received spoiled beans and informed officer F. Dotson who logged it and informed the kitchen, but Plaintiff was not provided a replacement.

Defendant Stephen McComas states in all the grievances and appeals that the kitchen is not being contacted and there is no record. Plaintiff was also served rice which he is allergic to.

In July 2020, Plaintiff continued to receive spoiled bean and was informed by officer Contreras that he could only choose to eat or refuse the food. Plaintiff was not allowed grievance forms. Officer Marquez informed Plaintiff that the "higher ups" would no longer inform the kitchen or allow him to file a grievance regarding spoiled food.

In the first week of July 2020, officer Gutirez informed Plaintiff that the "higher ups" instructed her not to inspect his lunch nor would Plaintiff be allowed to inspect the food in from of officers. Gutirez also advised Plaintiff that the "higher ups" instructed her not to notify the kitchen if Plaintiff complains about spoiled food.

Sergeant Velasco admitted that the food from Trinity Food Service could get spoiled because it is stored for several weeks.

Phillip Ecker, as Director of Trinity Food Service is in charge of providing clean sanitized meals for Plaintiff and all inmates. Because Phillip Ecker signed off on Plaintiff's grievances, he is the official responsible to provide Plaintiff with fresh food.

Plaintiff does not have an EpiPen to treat an allergic reaction.

Captain Stephan McComas is the "higher ups" referred to by officers Marquez and Gutirez who instructed not to inform the kitchen of spoiled beans or provide a grievance form.

## III.

## DISCUSSION

### A.     Official Capacity

Plaintiff asserts that he is suing each of the named Defendants in both their individual and official capacities for monetary damages.

"Suits against state officials in their official capacity … should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991); Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Id. at 166.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). Therefore, Plaintiff's claim for monetary damages against all of the named Defendants in their official capacity is barred by the Eleventh Amendment.

### B.     Inadequate Food

The Fourteenth Amendment protects the rights of pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 545 (1979). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Demery v. Arpaio, 378 F.3d 1020, 1029

6

(9th Cir. 2004) (quoting Bell, 441 U.S. at 535). During the period of detention prior to trial, a pretrial detainee may be properly subject to the conditions of the jail so long as they do not amount to punishment. Bell, 441 U.S. at 536–37.

"Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.' " Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)).  To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018).

Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. Id.; Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).  However, "a de minimis level of imposition" is insufficient. Bell, 441 U.S. at 539 n.21.  In addition, the " 'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting Daniels v. Williams, 474 U.S. 327, 330-31 (1986)).  Thus, a plaintiff must "prove more than negligence but less than subjective intent -- something akin to reckless disregard." Id.  The Constitution requires that prisoners and detainees receive food that is adequate to maintain health, but the food need not be tasty or aesthetically pleasing. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993).

Plaintiff alleges that for the past ten months, he has been served dinner trays consisting of beans, mystery meat, green beans, apple sauce, cheese, and three slices of ham for breakfast/lunch. While Plaintiff's meals may not have been tasty or aesthetically pleasing, there are insufficient allegations that these meals were not adequate to maintain Plaintiff's health.

Plaintiff further alleges that he was served spoiled beans on several different occasions, and on one occasion he suffered an allergic reaction because he was forced to eat food for which he was allergic. However, Plaintiff's own allegations indicate that on several occasions he was provided a replacement for the alleged spoiled beans. (Sec. Am. Compl. at 22.) Further, Plaintiff's allegations reflect that Plaintiff had access to and consumed other food-food that presumably did not cause an allergic reaction, or the January 25, 2020 incident would not have been isolated. Plaintiff's claim that food service director Phillip Ecker was somehow negligent or responsible simply because he signed off on Plaintiff's grievance is insufficient to give rise to a constitutional violation. Further, the fact that, on one occasion, Burton did not investigate his claim that he was served spoiled beans, without more, does not support a finding of a constitutional violation. Campbell v. Cal. Dep't of Corr. & Rehab., 453 F. App'x 634, 636 (9th Cir. 2011) (granting summary judgment when plaintiff "failed to present sufficient evidence of causation between the alleged violations and any food-borne illness" (citing Harper v. City of L.A., 533 F.3d 1010, 1026 (9th Cir. 2008)); See Woods v. Reyes, No. 2:17-cv-01936-JAD-CWH, 2019 WL 3535749, at *3 (D. Nev. Aug. 2, 2019) (finding "conclusory" plaintiff's allegations that he was exposed to hepatitis, botulism, ptomaine, and other diseases from jail's use of old trays); Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996) ("[P]rison food need not be tasty or aesthetically pleasing," only "adequate to maintain health.") (citation omitted).

In addition, even assuming as Plaintiff alleges, that he was occasionally served spoiled beans that were sometimes not replaced, such allegations fail to demonstrate that he was not otherwise provided an adequate diet to maintain his health. Moreover, although Plaintiff contends that in July 2020, officials would no longer inspect or notify the kitchen of spoiled beans, the fact remains that there are insufficient factual allegations to demonstrate that he was not otherwise provided an adequate diet. Furthermore, the responses to two of Plaintiff's inmate appeals reflect that the jail was aware of Plaintiff's special dietary needs and continued to monitor the situation which negates a finding that prison officials did not take reasonable available measures to abate any risk to Plaintiff's health. In response to Plaintiff's appeal submitted on April 10, 2020, Captain McComas stated, in pertinent part, as follows:

> On 4/13/20, Food Service Director Ecker investigated your grievance of an error made in the contents of your meal. The kitchen was notified by floor staff after your verbal complaint to them and the kitchen prepared another meal for you and it was delivered.
>
> I am in agreement with you on one statement that you made concerning the kitchen, it is not flawless. There upwards of 2100 inmates in custody and Trinity Foods not only takes pride in the food being served but makes every attempt to ensure its quality assurance is being adhered to.
>
> Trinity foods is taking steps to ensure that your personal meals get extra attention, the Cook and on duty Food Supervisor inspect and check the food quality and quantity each and every day to help curtail your displeasure with your delivered meals.

(Sec. Am. Compl. at 45.) In response to Plaintiff's appeal submitted on May 24, 2020, Captain McComas stated, in pertinent, as follows:

> On 5/27/20, Food Service Director Ecker investigated your claims into wheat tortillas being served to you on 5/23/20. In review of your Special Dietary needs, which the kitchen has on record, clearly state, you are allergic to carrots, codfish, peanuts, eggs, soybean [] products, WHEAT, corn, shrimp, pork, grapes, cabbage, oats, oranges, rye, rice, potatoes, tuna fish, tomatoes, crab, lettuce and bell peppers. A registered dietician prepares a menu for all inmates with special dietary needs on individual basis. The registered dietician is on staff and is a professional food and nutritional expert who has met the strict educational standards set forth by the commission on Dietetic Registration of the Academy of Nutrition and Dietetics. Trinity Food Service is committed to ensuring that all dietary needs of you and all inmates are taken into consideration when preparing menus as well as food and make smart dietary food alternatives for those (such as yourself) who require special meals.

(Sec. Am. Compl. at 36.)

Based on the foregoing, Plaintiff fails to state a cognizable claim for deliberate indifference.

**C.     Equal Protection**

To the extent Plaintiff contends that he is not being served a variety of different foods that are served to other inmates, Plaintiff fails to state a claim under the Equal Protection Clause of the Fourteenth Amendment. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburn v. Cleburn Living Ctr., 473 U.S. 432, 439 (1985). Plaintiff does not allege any facts suggesting that he was treated differently from others similarly situated based on his membership in a protected class, nor does he allege a classification that implicates fundamental rights. See Lee v. City of Los Angeles, 250

F.3d 668, 686 (9th Cir. 2001). As a result, Plaintiff appears to be proceeding with a "class of one" equal protection claim. See N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."). "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [defendant] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." Id.; see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) ("Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment."). Plaintiff has not alleged any of the necessary elements required to support an equal protection class of one claim with respect to his dietary needs. Instead, he merely posits that other inmates receive a variety of different food, and concludes he is being treated different than other inmates in the jail. However, there are no allegations that Defendants "intentionally treated [him] differently from others similarly situated." See Vill. of Willowbrook, 528 U.S. at 564. Plaintiff offers no facts to support a reasonable inference that he and the "other" inmates share the same underlying medical or dietary needs; nor does he allege that any difference in treatment between him or any other inmate similarly situated was intentional. See Iqbal, 556 U.S. at 568 ("[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to show entitlement to relief). As pleaded, Plaintiff's conclusory allegations are clearly insufficient as a matter of law. See, e.g., George v. Uribe, No. 11-CV-70 JLS (RBB), 2012 WL 993243, at *6 (S.D. Cal. Mar. 23, 2012) (concluding that allegations that defendants "intentionally treated Plaintiff differently from others" who participated in a prison riot was insufficient without supporting facts). Accordingly, Plaintiff fails to state a cognizable equal protection claim.

**D.     Medical Treatment**

A claim of inadequate medical attention by a detainee is based on the Fourteenth Amendment and evaluated under the deliberate indifference standard. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). Courts analyze inadequate medical care claims like other conditions-of-confinement claims, including failure to protect. Gordon v. County of Orange, 888 F.3d at 1123-24.

The Court of Appeals for the Ninth Circuit identifies the "elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer" as follows:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro v. County of Los Angeles, 833 F.3d at 1071. In addition, "[w]ith respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the 'facts and circumstances of each particular case.' " Id., citing Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989).

Pretrial detainees do not have to prove that prison officials who allegedly administered subpar medical treatment were subjectively aware of the medical risk; instead, plaintiffs need only show that the misconduct was objectively unreasonable. Kingsley v. Henrickson, 135 S. Ct. at 2473-74. However, a plaintiff must prove more than mere negligence, or the lack of due care, to prove an intentional deprivation under this standard. Daniels v. Williams, 474 U.S. at 330-31. In addition, where delay in treatment is alleged, "the delay must have caused substantial harm." Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (citing Shapley v. Nevada Bd. Of State Prison Comm'rs., 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff has failed to state a cognizable claim for based on the alleged denial of medical care. Plaintiff's claim that Defendant Obadina intentionally allowed his diet to continue to consist of beans, despite his high iron level, is nothing more than a difference of opinion which does not give rise to a cognizable claim. Indeed, Plaintiff indicates that Obadina referred him for lab work, and told him not to worry as there was no concern about his iron level. Such allegations do not demonstrate intentional decision which subjected Plaintiff to a substantial risk of suffering harm. Further, Plaintiff's contention that he should have been referred for further allergy testing, is nothing more than a

difference of opinion, which fails to state a cognizable civil rights claim.  In addition, Plaintiff's claim that his outside doctor recommended further treatment and/or evaluation, is nothing more than a difference of opinion between a prisoner and jail or prison medical staff as to the proper course of treatment for a medical condition which does not give rise to a § 1983 claim.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Accordingly, Plaintiff fails to state a cognizable claim for relief.

### E. Inmate Appeal Process

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. at 221.  Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  Similarly, Plaintiff may not impose liability on a defendant simply because he or she played a role in processing or responding to Plaintiff's inmate appeals.  See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (because an administrative appeal process is only a procedural rights, no substantive right is conferred, no due process protections arise, and the "failure to process any of Buckley's grievances, without more, is not actionable under section 1983.").  Therefore, Plaintiff cannot seek liability against any Defendants, solely, for their involvement in reviewing and denying his inmate appeals.

### F. Violation of CDCR Regulations

"[W]hen a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action."  Lovell v. Poway Unified School Dist., 90 F.3d 367, 370 (9th Cir. 1996) (citation omitted).  "However, Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal Constitution and laws," and "[t]o the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress."  Lovell, 90 F.3d at 370-71 (citation and internal quotation marks omitted).  In addition, conduct may violate a written policy without violating the Constitution.  See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (federal due process is not implicated when prison officials fail to comply

12

with state procedural protections that are more generous than those that are constitutionally mandated), overruled on other grounds by Sandin, 515 U.S. at 483-84; Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process, if constitutional minima are nevertheless met.").

Plaintiff contends that prison regulations mandate that inmates receive a "wide variety of food." However, the mere violation of a prison rule or regulation does not necessarily establish a constitutional violation. Plaintiff has not alleged any facts by which the Court can reasonably infer that the failure to follow a prison regulation violated Plaintiff's constitutional rights. Accordingly, Plaintiff fails to state a cognizable claim for relief for an alleged violation of a CDCR regulation.

### G.   Leave to Amend

The Court will recommend that the second amended complaint be dismissed without leave to amend because Plaintiff was previously notified of the deficiencies and has failed to correct them. A plaintiff's "repeated failure to cure deficiencies" constitutes "a strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to amend would be futile[.]" See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 10088 (9th Cir. 2009) (internal quotation marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations—none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), amended by 234 F.3d 428, overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

Because Plaintiff has been given two prior opportunities to amend the complaint to cure the deficiencies and was unable to do so, the Court will recommend that the dismissal be without leave to amend. Where a "plaintiff has previously been granted leave to amend and has subsequently failed to

add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." Zucco, 552 F.3d at 1007 (quotations and citations omitted). The Court finds that granting further leave to amend would be futile because Plaintiff was previously notified of the deficiencies and failed to fix them in the second amended complaint.

## IV.
## CONCLUSION AND RECOMMENDATION

Based on the foregoing, Plaintiff fails to state a cognizable claim for relief and further leave to amend would be futile.

Accordingly, it is HEREBY RECOMMENDED that the instant action be dismissed, without leave to amend, for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 24, 2021**

UNITED STATES MAGISTRATE JUDGE